UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:14-CV-990-ORL-37 KRS

XEROX HR SOLUTIONS, LLC,

      Plaintiff,

vs.

DARDEN RESTAURANTS, INC.,

      Defendant.
_____/

## COMPLAINT

Plaintiff, Xerox HR Solutions, LLC ("Xerox"), files this action for damages against Defendant, Darden Restaurants, Inc. ("Darden"), for breach and wrongful termination of a Master Services Agreement dated October 19, 2012 ("Agreement")[1], and for quantum meruit relief, and alleges the following in support thereof.

### Jurisdiction and Venue

1. Subject matter jurisdiction over this action is based upon diversity under 28 U.S.C. § 1332(a)(1), as this action arises from a dispute between citizens of different states.

2. Xerox is a Pennsylvania limited liability corporation with its principal place of business in New Jersey.

---

[1] Due to confidentiality provisions in the Agreement, Xerox does not attach the Agreement to the Complaint, but will file under seal upon obtaining leave from Court to file under seal.

3. Darden is a Florida corporation with its principal place of business in Orlando, Florida.

4. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as Xerox's damages are estimated to exceed $13 million.

5. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because (1) Darden resides in the District; (2) a substantial part of the breach, events or omissions giving rising to this claim occurred in the District; and (3) pursuant to the mandatory venue clause of § 15.4 of the Agreement, requiring Xerox to file any actions against Darden in Orlando, Florida.

6. Personal jurisdiction is also proper under:

   a. § 48.193(1)(a)(1), Florida Statutes, as Darden operates, conducts, engages in, and carries on a business or business venture in Orlando, Florida;

   b. § 48.193(1)(a)(7), Florida Statutes, as Darden breached the Agreement in Florida by failing to perform acts that the Agreement required to be performed in Florida;

   c. § 48.193(2), Florida Statutes, as Darden is engaged in substantial and not isolated activity in Florida; and

   d. Darden's express consent to personal jurisdiction herein under § 15.4 of the Agreement.

7. All conditions precedent have been fully satisfied, complied with, occurred, or have been waived prior to filing this Complaint.

### Factual Allegations

8. Xerox and Darden entered into a Master Services Agreement dated October 19, 2012, which included twenty-two (22) numbered Exhibits, whereby Xerox would provide services, including but not limited to human resources, benefit enrollment, and other administrative services.

9. The Agreement called for services to be implemented by certain dates called "Critical Transition Milestones" set forth in what was known as a "Transition Plan" (Exhibit 18), as subsequently modified by the Parties.

10. Xerox began performing and incurred substantial expenses under the Agreement in accordance with its terms and conditions.

11. At all relevant times, Xerox performed its obligations under the Agreement without breaching the Agreement.

12. The Agreement provided for a fixed term through December 31, 2018, unless terminated within one of the provisions of § 12 of the Agreement.

13. Darden breached the Agreement by a termination letter dated July 26, 2013, effective immediately.

14. In its one-sentence, conclusory termination letter wrongfully terminating the Agreement, Darden purported to invoke § 12.1(g) of the Agreement, titled "Transition Failure," despite the fact that Darden lacked

any factual or legal basis or justification to terminate the Agreement under this section.

15. The Termination Letter did not invoke any other provision for termination prior to the conclusion of the five-year term.

16. Specifically, § 12.1(g) states in relevant part:

> <u>Transition Failure</u>. On a Statement of Work by Statement of Work basis, but subject to any delays caused by a failure by Customer to perform any Customer Responsibility in accordance with Section 3.2 (Customer Responsibilities), Customer may terminate the Agreement and/or any applicable Statement of Work, if certain agreed upon Critical Transition Milestone(s) are not achieved in accordance with the timeframes set forth in the "<u>Transition Plan</u>" <u>Exhibit</u>. For the avoidance of doubt, the Parties may agree, in writing, to extend the delivery date for any Critical Transition Milestone, including those Critical Transition Milestones subject to this paragraph.
>
> As of the Effective Date, the Parties agree as follows: Customer may terminate the Agreement and/or Statements of Work No. 1 and/or No. 2 if the "Annual Enrollment Live Date" Critical Transition Milestone is not achieved within forty five (45) days after Customer's written approval of all Customer client acceptance testing specified in the Transition Plan. In such event, Customer may terminate the Agreement and/or the applicable Statement(s) of Work at Customer's election, immediately by providing notice to Service Provider of Customer's election to so terminate, effective as of the date such notice is given or a later date specified in such notice, without providing Service Provider any additional right to cure.

Agreement, § 12.

17. At the time of the Termination Letter, none of the conditions that allowed for termination by Darden had occurred.

18. As of July 26, 2013, Xerox had met and achieved all applicable Critical Transition Milestones in accordance with the timeframe(s) set by

Agreement, as modified and extended by subsequent agreement amongst the parties, and met all of Xerox's obligations under the Agreement.

19. In its Termination Letter, Darden did not identify a single missed Critical Transitional Milestone.

20. The "Annual Enrollment Begins" date of November 4, 2013, was the operative Critical Transition Milestone pursuant to the Agreement under the Transition Plan, as subsequently extended by agreement between Darden and Xerox.

21. In fact, Darden's premature, wrongful termination on July 26, 2013, which breached the Agreement, occurred several months prior to the "Annual Enrollment Begins" date of November 4, 2013.

22. All other "Completion Dates" referenced in the Transition Plan (Exhibit 18) were "estimated completion dates" which required subsequent confirmation.

23. Notwithstanding Xerox's full performance of its obligations under the Agreement, Darden delayed implementation by chronically failing to perform its responsibilities under the Agreement, including but not limited to repeatedly requesting changes and additions to the services from February through July 2013.

24. In February 2013, Xerox notified Darden that if Darden did not finalize its requirements for the services by April 1, 2013, then the

implementation of the "Annual Enrollment Begins" date would be at risk for delay.

25. Notwithstanding Xerox's timely notification to Darden, Darden continued to revise its requirements for services through July 8, 2013, when Darden notified Xerox that Darden sought new additional services, including but not limited to a medical plan.

26. Darden continued to breach and fail to perform its contractual obligations under the Agreement and caused additional delays by, among other things, (a) repeatedly failing to sign off on transition requirements in a timely manner, (b) failing to finalize requirements for the services by April 1, 2013, (c) repeatedly requesting changes to the requested services.

27. Darden's failure to perform its obligations under the Agreement caused delays to the applicable Critical Transition Milestone date(s), and as such, Xerox was allowed additional time to perform its obligations under the Agreement.

28. Xerox and Darden agreed to a "soft launch" date of October 11, 2013.

29. Due to Darden's ongoing failure to perform its obligations, Xerox notified Darden that the October 11, 2013, "soft launch" date would be delayed due to Darden's actions and omissions, but that Xerox could nevertheless offer a limited "soft launch" on October 11, 2013, to begin the transition process, and would proceed with and provide a full "Annual

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131  Telephone: 305-379-3686 · Facsimile: 305-379-3690

Enrollment Begins" Critical Transition Milestone, as agreed to by the Parties, on November 4, 2013.

30. Darden unilaterally suspended meetings with Xerox in response to Xerox's notice that the October 11, 2013, "soft launch" would be limited due to delays caused solely by Darden, notwithstanding Xerox's continuing commitment to the November 4, 2013, "Annual Enrollment Begins" Critical Transitional Milestone date.

31. Darden's unilateral suspension of meetings frustrated and interfered with Xerox's ability to perform its obligations under the Agreement, including meeting the "soft launch" and "Annual Enrollment Begins" deadlines.

32. Notwithstanding Darden's ongoing delays and failure to perform its responsibilities under the Agreement, Xerox communicated on July 26, 2013, that it would be able to complete a full "soft launch" on October 11, 2013, and complete the full "Annual Enrollment" on November 4, 2013.

33. On July 26, 2013, Xerox confirmed that it would fully perform all its obligations in accordance with the Agreement and offered to meet with Darden to discuss any concerns with Darden.

34. Notwithstanding Xerox's ongoing performance of all its obligations under the Agreement, including but not limited to achieving any applicable Critical Transition Milestones to date, Darden unilaterally terminated the Agreement on July 26, 2013, despite the absence of any Transition Failure.

35. Following its wrongful termination, Darden willfully abandoned the project and intentionally failed to perform its duties and obligations under the Agreement, including severing all communication with Xerox and failing to finalize requirements for services, causing Xerox to incur substantial damages and losses.

36. Darden's unilateral, wrongful termination and breach of the Agreement also violated and breached the dispute resolution procedures under the Agreement, which require among other things that each party must "continue to perform its obligations under the Agreement while any Dispute is being resolved..."

37. In a good faith effort to continue performing under the Agreement, Xerox remained ready, willing, and able to continue its performance notwithstanding Darden's Termination Letter.

38. Xerox wrote to Darden on July 31, 2013, and August 16, 2013, reiterating Xerox's willingness to continue performing its obligations under the Agreement. Xerox also stated that it would comply with the dispute resolution process as set forth in the Agreement.

39. Again, Darden remained in breach of the Agreement by failing to continue to perform its obligations and follow the dispute resolution provisions under the Agreement, notwithstanding the purported dispute, as required by § 15 of the Agreement.

40. Over 30 days after Xerox's July 31, 2013, letter, on August 30, 2013, Darden finally responded that it would not retract its termination, would not honor its obligations under the Agreement, and would seek another provider for the services.

41. Darden's August 30 letter further repudiated any possibility of following the dispute procedures set forth in the Agreement.

42. Darden's wrongful termination for a purported Transition Failure that never occurred is null, void, and without effect, entitling Xerox to recover as damages the full quantum of payments owed under the Agreement for the full Term of the Agreement (through December 31, 2018), the development and other costs incurred by Xerox in performing its obligations under the Agreement, as well as compensatory damages, lost profits, attorneys' fees, costs, and expenses, and other damages.

## Count I – Breach of Contract

43. Xerox incorporates paragraphs 1-42 above as if fully stated herein.

44. The subject Agreement, including the twenty-two (22) numbered Exhibits, as subsequently modified by the Parties, is a valid, enforceable contract between Xerox and Darden.

45. As set forth in great detail in Paragraphs 1-42 above, Darden breached the Agreement by prematurely and wrongfully terminating the Agreement for a purported "Transition Failure" that had not occurred.

46. Darden also breached the Agreement by, among other things, failing to perform its obligations under the Agreement, and repudiating the Agreement outright when a dispute arose, breaching the dispute resolution procedures that require ongoing performance during a dispute.

47. Xerox fully performed its obligations under the Agreement.

48. Darden breached its obligations under the Agreement, causing Xerox to incur substantial damages in an amount to be determined prior at trial, but presently believed to be in excess of $13 million.

Wherefore, Plaintiff Xerox HR Solutions, LLC, seeks a monetary judgment in its favor in the amount of its damages (presently estimated to be in excess of $13 million, the quantum of annual payments in excess of $2.5 million over the 5-year term), including but not limited to all compensatory damages, lost profits, consequential damages, special damages, attorneys' fees, costs, expenses, pre-judgment and post-judgment interest, and all other relief that this Court may deem just and proper.

### Count II – Quantum Meruit

49. Xerox incorporates paragraphs 1-42 above as if fully stated herein.

50. Xerox undertook significant expense in developing products, allocating resources, and incurring development and other costs in undertaking to provide the subject services and other valuable services to Xerox.

51. Xerox undertook significant expenses and costs to provide services and other valuable services to Darden, acting in reliance on and reasonably expecting Darden, pursuant to mutual agreement, to compensate Xerox fully for such expenses and costs through annual payments exceeding a total of $2.5 million over a 5-year term.

52. Darden acquiesced and agreed to the provision of services by Xerox.

53. Darden received, benefited from, and retained the benefit of valuable services from Xerox.

54. Darden was aware that Xerox provided such services with the expectation of receiving compensation at a value in excess of $2.5 million over a 5-year term.

55. Darden has been unjustly enriched and benefited from its wrongful actions.

56. Darden's wrongful actions caused Xerox to incur substantial damages in excess of $13 million.

Wherefore, Plaintiff Xerox HR Solutions, LLC, seeks all compensatory damages, lost profits, consequential damages, special damages, attorneys' fees, costs, expenses, pre-judgment and post-judgment interest, and all other relief that this Court may deem proper.

Dated: June 23, 2014

Respectfully submitted,

/s/ Jerry D. Hamilton
Jerry D. Hamilton
Florida Bar No. 970700
jhamilton@hamiltonmillerlaw.com
Robert M. Oldershaw
Florida Bar No. 86071
roldershaw@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
*Attorneys for Plaintiff*
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone: (305) 379-3686
Facsimile: (305) 379-3690